UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

**SHARON BOOKER**

    Plaintiff

vs.

**EXPRESS SCRIPTS INC.
Formerly known as ACCREDO**    Civil #: _____

    Defendant

# JURY DEMANDED

# COMPLAINT

1. COMES NOW, Plaintiff and brings this action against her former employer for employment discrimination for racial discrimination, in violation of the Age Discrimination Act, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. {2000e-16 and 29 C.F.R. {{1614.101 (a) .Jurisdiction is specifically conferred on the court by 42 U.S.C.} 2000e-5. Equitable and other relief are also sought under 42 U.S.C. {2000e-5(g).

2. Plaintiff, Sharon Booker is, an African American female and a citizen of the United States and resides at6773 The Willows Cove; Memphis Tennessee; 38119

3. Defendant's Corporate Headquarters is listed as One Express Way, MS HQ-2E03 , St. Louis, MO 63121: Office 314.684.6196.

1

4. Plaintiff was employed by the defendant in its Memphis location at 140 Century Center Parkway; Memphis Tennessee 38134.

5. Defendant unlawfully discriminated against plaintiff in the manner indicated in paragraphs 9 and 10 of the compliant that resulted in Plaintiff being subjected to unjust, unmerited, unwarranted and unlawful discriminatory employment and personnel decisions that created adverse employment determinations

6. Plaintiff filed timely charges against the Defendant when she filed with the US EEOC Case # 490-2016- 01944 on June 20, 2016.

7. The EEOC issued a Right to Sue notice on March 30, 2017 **EXHIBIT # 1** Plaintiff received her notice five days after the stamped mail date, listed as March 30, 2017.

8. Because of plaintiff's (1) __X__ Race, (2) __X__ color, (3) _sex, ___religion, (5) ___national origin (6) _____ (7) __ Disability: __ _X_ Age; (8)_X_ Retaliation, Defendant:

    (a)_____ failed to employ plaintiff.

    (b) __**X**____ terminated plaintiff's employment.

    (c)_____ failed to promote Plaintiff to a promotional opportunity.

    (e)__**X**____ subjected Plaintiff to unlawful discrimination

9. The circumstances under which the defendant discriminated against plaintiff are as follows: (all supportive documents referenced in paragraph 9 are all found in **Collective Exhibit #2:**

1. Plaintiff was hired on November 27, 2000.

2

2. Plaintiff was hired as a Patient Account Representative.

3. Plaintiff perform the duties of Patient Account Representative from 200- through 2002.

4. As a Patient Account representative, Plaintiff, analyzed outstanding accounts receivable.

5. As a Patient Account representative, Plaintiff, reviewed claims to obtain maximum reimbursement.

6. As a Patient Account representative, Plaintiff, identified payment variances, resolving differences, and communicates corrected billing guidelines.

7. As a Patient Account representative, Plaintiff, determined and initiated action to resolve rejected claims.

8. As a Patient Account representative, Plaintiff, maintained follow-up on patient accounts to include unapplied payments within established guidelines.

9. As a Patient Account representative, Plaintiff, telephoned or sent form letters in initial stages of collection process to delinquent account.

10. As a Patient Account representative, Plaintiff, escalated delinquent accounts to upper management for appropriate action.

11. As a Patient Account representative, Plaintiff, responded to billing inquiries from branch offices and insurance companies.

12. As a Patient Account representative, Plaintiff, responded to insurance carriers' requests for additional information.

13. As a Patient Account representative, Plaintiff, answered inquiries regarding patient accounts, respecting patient confidentiality and legal limits on releasing information.

14. As a Patient Account representative, Plaintiff, analyzed each payor and/or patients/clients outstanding accounts receivable, re-bills, refunds, and denials to obtain maximum reimbursement. Clears payment variances, resolving differences, and initiating corrective action.

15. As a Patient Account representative, Plaintiff, identified and communicated system updates to ensure accurate processing and timely collections.
16. As a Patient Account representative, Plaintiff, reviewed and communicated claim submissions and payment expectations with payors.
17. As a Patient Account representative, Plaintiff, obtained and inputted patient demographics.
18. Plaintiff reported to Defendant's Management employee June Watkins.
19. Plaintiff also reported to Defendant's Management employee Sylvia Childes.
20. During Plaintiff's employment, she received only one performance evaluation under Defendant's Management employee Sylvia Childes.
21. During Plaintiff's employment, she received only one performance evaluation under Defendant's Management employee June Watkins.
22. Plaintiff interviewed for the promotional opportunity for Quality Assurance Analyst.
23. In December 2002, Plaintiff was promoted to Quality Assurance Analyst
24. Plaintiff worked as a Quality Assurance Analyst from 2002 through 2012.
25. Plaintiff did NOT receive any formal training for her promotional position opportunity as Quality Assurance Analyst.
26. Plaintiff's training was hands on for her promotional position opportunity as Quality Assurance Analyst.
27. Plaintiff's training method was shadowing a team member for her promotional position opportunity as Quality Assurance Analyst.
28. As a Quality Assurance Analyst, Plaintiff, conducted quality assurance reviews to ensure consistency and compliance for Patient Account Representatives
29. As a Quality Assurance Analyst, Plaintiff, analyzed authorizations and claims processing for accuracy.

30. As a Quality Assurance Analyst, Plaintiff, maintained insights to different formulary designs for US commercial, Managed / State Medicaids and Medicare payors and the influence of PBMs.
31. As a Quality Assurance Analyst, Plaintiff, identified opportunities for process improvement.
32. As a Quality Assurance Analyst, Plaintiff, developed reports and recommendations.
33. As a Quality Assurance Analyst, Plaintiff, coordinated reimbursement process.
34. As a Quality Assurance Analyst, Plaintiff, identifies insurance billing errors.
35. As a Quality Assurance Analyst, Plaintiff, maximized patient access to injectible / infused drugs or home nursing activities.
36. As a Quality Assurance Analyst, Plaintiff, identified training development opportunities for quality improvement.
37. As a Quality Assurance Analyst, Plaintiff, served as a liaison with reimbursement and other departments.
38. As a Quality Assurance Analyst, Plaintiff, was aware that Payor / billing changes may have been identified and various departments were educated.
39. As a Quality Assurance Analyst, Plaintiff, analyzed trends to help with implementing new procedures impacting audits and training.
40. As a Quality Assurance Analyst, Plaintiff, worked on special Projects as requested by Management (Palmetto manufacture rebate changes; EOB payment variances)
41. Plaintiff reported to Defendant's Management employee Michelle King Lynch, Manager in her new promotional position as Quality Assurance Analyst.
42. Plaintiff interviewed for the promotional opportunity for Staff Client Auditor.
43. In November 2012 Plaintiff was promoted to Staff Client Auditor.
44. Plaintiff worked as Staff Client Auditor from 2012 through 2015.
45. Plaintiff did NOT receive any formal training for her promotional position opportunity as Staff Client Auditor.

5

46. Plaintiff's training was hands on for her promotional position opportunity as Staff Client Auditor.

47. Plaintiff's training method was shadowing a team member for her promotional position opportunity as Staff Client Auditor

48. As a Staff Client Auditor plaintiff, managed all aspects of assigned audits for Accredo- includes basic documentation requests, large or complex documentation requests, and basic refund requests.

49. As a Staff Client Auditor plaintiff, managed Various finance/audit projects throughout the year.

50. As a Staff Client Auditor plaintiff, assisted in Client Audit Automation project as needed

51. As a Staff Client Auditor plaintiff, identified issues and assess if there is potential BOB impact- perform impact analysis as needed to report to Sr. Management.

52. As a Staff Client Auditor plaintiff, participated in onsite Payor audits (included travel to pharmacy and providing support as needed).

53. As a Staff Client Auditor plaintiff, effectively worked with the pharmacies and reimbursement as needed to compile supporting documentation or research potential issues to ensure complete and accurate responses to audits.

54. As a Staff Client Auditor plaintiff, provided on-going updates to management regarding audit states, including escalation of issues impacting deliverables in a timely manner to avoid any issues

55. Plaintiff reported to Defendant's Management employee Debbie Macarthur, Staff Client Auditor in her new promotional positon as Staff Client Auditor.

56. Plaintiff's final and last position working for Defendant was in the position of Staff Client Auditor.

57. Plaintiff's promotional opportunities occurred by the approval and selection by Defendant's Management employee, Michelle Lynch.

58. Plaintiff's promotional opportunities occurred by the approval and selection by Defendant's Management employee, Sandy Matiko

59. Plaintiff was awarded and recognized twice for "Whatever IT Takes" award for performance in the promotional opportunity in her role and selection as Staff Client Auditor position.

60. Plaintiff also received an award WOW award and "Whatever It Takes" award for her excellent performance.

61. Plaintiff did not receive disciplinary actions until she was a Staff Client Auditor after 12 years as an Accredo employee.

62. Plaintiff was placed on a Performance Improvement Plan for "Time Management" in April 2014 based on the expectation of the manager not the expectation of the job duties.

63. The reasons that were listed by Defendant on the PIP were stated on the evaluation.

64. Plaintiff received a "meets expectation" on the evaluation she received in March 2014.

65. Plaintiff's PIP in April was in direct competition to her issued successful meets expectation evaluation received a month prior to April.

66. Plaintiff received a raise and bonus in response to her meets expectation evaluation she received in March 2014.

67. Plaintiff did not receive the PIP action in April until she went to the Sr. Director Michael Monia concerning her "meets expectation" rating.

68. Plaintiff reasonably perceived and believed and felt that she should have received a higher rating.

69. Plaintiff felt she should have been given a higher rating since she was working excessive overtime.

70. Plaintiff felt she should have been given a higher rating since she was mentor/training other team members.

71. Plaintiff felt she should have been given a higher rating since she was taking on more responsibility because her manager was training her to be Senior Auditor.

7

72. The reason Plaintiff was being trained as Sr. Auditor was because she was supposedly the strongest team member.

73. Defendant did not have any clear goals for the team.

74. Since Defendant did not have clear team goals, things changed according to what the manager was feeling at the time.

75. Defendant's Management employee Debbie MacArthur issued disciplinary action.

76. Plaintiff did not file any charges against defendant.

77. Plaintiff felt she was retaliated against because she went to the Sr. Director who was the boss of her Director and Manager concerning her last evaluation.

78. Plaintiff was not happy with the meets rating.

79. Plaintiff was working OT, mentoring/training team members.

80. Plaintiff was considered the go to lead person on the team.

81. Plaintiff was referred to y co-workers as the lead go to team member.

82. Plaintiff was referred to and treated by Defendant's Management as the lead go to team member.

83. Plaintiff was on FMLA for chronic Asthma conditions.

84. Plaintiff asked for accommodation in November of 2013 and NEVER received any feedback or accommodation.

85. Plaintiff was assigned several large projects to "help me train" as a Senior Auditor with no direction from Manager.

86. Plaintiff worked 8:00 am to 8:00 pm every night and on weekends.

87. Defendant and Plaintiff's Manager was aware I worked through my lunch break but did not seem to care.

88. Plaintiff was told many times by management to ask for help.

8

89. However, when Plaintiff asked for help from Defendant, the Defendant through its Management without exception ALWAYS had some excuse as to why Plaintiff could not get any help.
90. Plaintiff was expected to help other team members yet Defendant refused to help Plaintiff.
91. The last project Plaintiff was assigned to was in Sept 2015.
92. Plaintiff was assigned to two prior team members, both had left the team but it was expected of Plaintiff to handle the project by herself.
93. Plaintiff 1 had just come off of vacation therefore, Plaintiff asked the Director if she could reach out to Defendant's Payor to obtain an extension.
94. Plaintiff was told by the Defendant that she could not obtain an extension.
95. Plaintiff worked from 8:00 am to 10:00 pm Friday, Saturday, and Sunday to finish the project without direction from Defendant's Manager or Director.
96. Plaintiff prepared the project to the best of her ability.
97. The prior teammates that had Defendant's project before Plaintiff, did not appeal the project correctly in the first place and they had the help of the director.
98. Yet Defendant's Director changed what Plaintiff did and asked for an extension from the Payor.
99. Plaintiff's relationship changed with management when she went to the Sr. Director concerning her evaluation and issues with management.
100. Plaintiff was working excessive overtime.
101. Plaintiff was working through lunch to meet deadlines and get projects done.
102. Plaintiff never missed a deadline.
103. Plaintiff helped other team members with their projects whose performance was lower than hers.
104. Plaintiff never received a bad evaluation.

105. Defendant's white employee Iris Hardrick a member on Plaintiff's team received a "needs Improvement "evaluation.

106. Defendant's white employee Iris Hardrick a member on Plaintiff's team received a "needs Improvement "evaluation was not terminated for performance.

107. Plaintiff, an African American was terminated for performance.

108. Plaintiff was terminated even though she had just received a meets expectation and a bonus.

109. Defendant's employee Arlene Smith personally stated to Plaintiff that her she was told her performance was below expectations yet she was not terminated for job performance.

110. Defendant subjected Plaintiff to workplace harassment over petty issues after she voiced her concerns.

111. Plaintiff was set up by Defendant.

112. Plaintiff was targeted to be terminated by Defendant.

113. Defendant intentionally discriminated against Plaintiff.

114. Plaintiff worked for Accredo for 15 years.

115. Plaintiff was promoted twice.

116. Plaintiff was in her last promoted position for 2 years and did not have any performance issues until she voiced her concerns with Defendant's Senior Management.

117. Plaintiff I met all deadlines on audits.

118. Plaintiff was the go to person on the team and took on more responsibility.

119. Defendant's employee Iris Hardwick went to HR with her concerns about management the same way Plaintiff did

120. Defendant's employee, white employee Iris Hardwick felt her concerns were not addressed.

121. Defendant's employee Iris Hardwick felt she was harassed by management yet she was not terminated for job performance like Plaintiff was.

122. Plaintiff was on FMLA for her chronic asthma and asked for accommodation for that as Federal law states yet Plaintiff received no follow up or feedback for her case.

123. Plaintiff' Manager on team calls would refer to female employees as "girls" and spoke condescending when teammates asked questions.

124. Defendant's employees and Plaintiff's coworkers came to her instead of the Manager.

125. Defendant's Manager stated to Plaintiff during her first evaluation that her ability to communicate was due to "her education".

126. Plaintiff felt Defendant's Manager meant that for an African American Plaintiff spoke well.

127. Defendant's Manager were unapproachable – team members stated that she made you feel "dumb" if you asked her a question or help which cause hostile work environment.

128. Plaintiff's termination was personal.

129. Plaintiff's termination was unlawful

130. Plaintiff's termination was based upon her race, African American.

131. Plaintiff's termination was based upon her Age, over 40.

132. Plaintiff's termination was retaliatory in nature after she engaged in protected activity.

133. Plaintiff's experienced stress of losing job causing chronic medical condition to worsen due to loss of medical benefits due to discrimination based on age and race and even retaliation.

134. Defendant's reasons and explanations for Plaintiff's termination are pretextual.

135. Plaintiff earned has a MBA.

136. Plaintiff earned and has a MHSA.

10. The acts set forth in paragraphs 9 of this complaint:

    (a) ___ ___ are still being committed by defendant.

  (b)\_\_ \_ \_\_\_ are no longer being committed by defendant.

  (c)\_\_ \_ **X** \_\_\_\_ may still be being committed by defendant.

11. Plaintiff attaches to this complaint a copy of the charges (formal Complaint) .

  **WHEREFORE**, Plaintiff prays that the following relief be granted following a jury in her favor:

    (a)\_\_\_\_ Defendant be directed to employ plaintiff,

    (b)\_\_ **X** \_\_Defendant be directed to re-employ plaintiff,

    (c\_\_ Defendant be directed to promote plaintiff

    (d) **X** \_\_\_\_**Defendant** be directed to pay:

1.) Compensatory damages against Defendant in an amount to be determined by the jury but not less than three hundred thousand dollars $300,000 and back pay of the salary plus bonus Plaintiff would have received from the date of termination to the date this case stops; 2) Any and all other pecuniary losses proximately caused by Defendant's unlawful conduct; 3.) Punitive damages against Defendant in an amount of twelve (1) million dollars or a punitive amount to be determined by the jury if the Jury finds the Defendant engaged in intentional, malicious and reckless acts of discrimination without regard to Plaintiff professional character, integrity and documented skill set.  4.) All costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees and reasonable attorneys' fees allowed under actions brought pursuant to 42 U.S.C. § 1981; 5) Such further relief as is deemed just and proper and appropriate including injunctive relief. 6) If the Court orders reinstatement as a resolution, Plaintiff wants to be a g-level employee, $62,000 annual Salary + raise and bonus for 2015 15 years of service intact-

Original date of hire; Non-relocate – desire to stay in Memphis; Desired Position- Staff Field Auditor; $52,000 monetary reward (yearly Salary)

Accommodation for Asthma (Work at Home)

**Plaintiff Signature**

**Printed Name** Sharon L Booker

**Plaintiff Address** 6773 The Willows Cove

**Plaintiff Phone** 901.670.0005

**DATE:** 6/30/2017

13